**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (admission pending)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*p.h.v.* forthcoming)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Attorneys for Plaintiff and the
Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN STEWART,<br><br>         Plaintiff,<br><br>v.<br><br>ACER INC., et al.,<br><br>         Defendants. | Case No. 3:22-cv-04684-VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT**<br><br>Hon. Vince Chhabria<br><br>Hearing Date: December 15, 2022<br><br>Time: 1:00 p.m. |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 1

LEGAL STANDARD .............................................................................................. 3

ARGUMENT .......................................................................................................... 3

I.    THE PARTIES DID NOT FORM AN AGREEMENT TO ARBITRATE ........................... 4

    A.    There Is No Agreement to Arbitrate Under the Warranty ......................... 4

    B.    There Is No Agreement to Arbitrate Under the EULA .............................. 6

II.    STEWART'S CLAIMS ARE NOT ARBITRABLE ....................................................... 7

    A.    The Parties Did Not "Clearly and Unmistakably" Delegate Arbitrability ................ 7

    B.    An Arbitration Agreement Under the EULA Would Not Cover Stewart's Claims ... 9

    C.    Any Arbitration Agreement Would Be Unenforceable as Unconscionable. .......... 11

        1.    The EULA's Arbitration Provision Is Unconscionable. .............................. 11

        2.    The Warranty's Arbitration Provision Is Unconscionable. ......................... 14

III.    CONDITIONAL REQUEST FOR ADDITIONAL DISCOVERY .................................... 14

IV.    JURY DEMAND ........................................................................................... 15

V.    CONDITIONAL REQUEST FOR STAY RATHER THAN DISMISSAL ........................ 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
  785 F.3d 1320 (9th Cir. 2015)................................................................................ 9

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022)................................................................................... 4

*Brennan v. Opus Bank*,
  796 F.3d 1125, 1129 (9th Cir. 2015).................................................................. 7, 8

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022)................................................................................. 7

*Dang v. Samsung Elecs. Co.*,
  673 F. App'x 779 (9th Cir. 2017) .......................................................................... 5

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  6 F.4th 308, 317 (2d Cir. 2021).............................................................................. 7

*Dennison v. Rosland Cap. LLC*,
  47 Cal. App. 5th 204 (2020)............................................................................ 13, 14

*Eiess v. USAA Fed. Sav. Bank*,
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................................................. 8

*Fisher v. MoneyGram Int'l, Inc.*,
  66 Cal. App. 5th 1084 (2021)...................................................................4, 11-12, 13

*Galilea, LLC v. AGCS Marine Ins. Co.*,
  879 F.3d 1052 (9th Cir. 2018)................................................................................ 7

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*,
  20 Cal. App. 4th 1372 (1993)............................................................................. 4-5

*Gutierrez v. FriendFinder Networks, Inc.*,
  2019 WL 1974900 (N.D. Cal. May 3, 2019) ....................................................... 15

*Inglewood Tchrs. Assn. v. Pub. Emp. Rels. Bd.*,
  227 Cal. App. 3d 767 (1991).................................................................................. 7

*Johnmohammadi v. Bloomingdales, Inc.*,
  755 F.3d 1072 (9th Cir. 2014).............................................................................. 15

*Knapke v. PeopleConnect, Inc.*,
  38 F.4th 824 (9th Cir. 2022)...................................................................... 3, 6, 15

# TABLE OF AUTHORITIES

## (Cases)

*Knutson v. Sirius XM Radio, Inc.*,
771 F.3d 559 (9th Cir. 2014)...................................................................... 5

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) ............................................. 8

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021)........................................................................ 4

*Logan v. Country Oaks Partners, LLC*,
82 Cal. App. 5th 365 (2022)...................................................................... 6

*MacClelland v. Cellco P'ship*,
2022 WL 2390997 (N.D. Cal. July 1, 2022) ............................................ 8

*Magill v. Wells Fargo Bank, N.A.*,
2021 WL 6199649 (N.D. Cal. Jun. 25, 2021) ......................................... 8

*Mohamed v. Uber Techs, Inc.*,
848 F.3d 1201 (9th Cir. 2016)................................................................... 8

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,
77 Cal. App. 5th 643 (2022)............................................................12-13, 14

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017)............................................................4-5, 6

*Pang v. Samsung Elecs. Am., Inc.*,
371 F. Supp. 3d 633 (N.D. Cal. 2019) .................................................... 5

*Pillar Project AG v. Payward Ventures, Inc.*,
64 Cal. App. 5th 671 (2021)................................................................6-7

*Taylor v. Shutterfly, Inc.*,
2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ....................................... 8

*Thompson v. Toll Dublin, LLC*,
165 Cal. App. 4th 1360 (2008)........................................................10-11, 13

*Vargas v. Delivery Outsourcing, LLC*,
2016 WL 946112 (N.D. Cal. Mar. 14, 2016) .......................................... 8

# TABLE OF AUTHORITIES

## Statutes and Rules

9 U.S.C. § 3 ................................................................................................................. 15

9 U.S.C. § 4 ............................................................................................................. 3, 15

Cal. Civ. Code § 1641 ................................................................................................... 9

Fed. R. Civ. P. 56 ......................................................................................................... 3

# INTRODUCTION

Defendants Acer, Inc. and Acer America Corporation (collectively, "Acer") have moved to compel arbitration (the "Motion") against Plaintiff Stephen Stewart. Acer's motion should be denied. First, Acer has not carried its burden to show that Stewart agreed with Acer to arbitrate this dispute. Second, to the extent there was such an agreement, it would be unenforceable under the doctrine of unconscionability.

# BACKGROUND

In November 2021, Plaintiff Stephen Stewart, an aerospace consultant, began looking for a new laptop computer. (Stewart Decl. ¶ 3.) After consulting computer review websites and other online materials, Stewart visited the Acer.com website. (*Id.* ¶¶ 4-5.) While on Acer.com, Stewart looked at the website's description of warranties related to his potential laptop purchase, an Acer Aspire 5. (*Id.* ¶ 6.) Stewart also looked at actual warranties on the Acer.com website. (*Id.* ¶ 7.) One warranty linked on Acer.com, alongside the title "Laptops[:] Consumer (Aspire, Swift, Switch, Spin)" (*see* Hogan Decl. Ex. 5), is the Acer Limited Warranty Agreement ("Warranty"), which is Exhibit B to Acer's Motion. While visiting Acer.com, Stewart did not click any button or otherwise indicate that he accepted any Acer warranty that was presented on the website. (Stewart Decl. ¶ 8.) He did not purchase a computer—or anything else—on Acer.com. (*Id.* ¶ 9.) Instead, Stewart left Acer.com and a short time later purchased an Acer Aspire 5 laptop from Amazon.com. (*Id.* ¶ 10.) Amazon.com does not require its purchasers to agree to an arbitration clause. (Dunne Decl. Ex. 1.)

Stewart received his Acer laptop in a box, which he personally opened. (Stewart Decl. ¶ 11.) He did not see any document or set of documents discussing the Warranty (or any other warranty) in the box he opened. (*Id.*)

In November 2021, shortly after Stewart received his Acer laptop and unboxed it, Stewart's nephew volunteered to set up the laptop. (Stewart Decl. ¶ 12.) Stewart did not monitor the setup process, and as a result did not look at or listen to the laptop as his nephew was setting it up, including during any initial boot-up process that may have occurred. (*Id.* ¶¶ 13-14.) During the initial boot-up of a new Aspire 5 laptop, a user is presented with a large blue screen that states

"Windows 10 License Agreement." (Zhou Decl. Ex. G; Dunne Decl. Ex. 2.) The screen, which is presented along with a narration by Microsoft's digital assistant Cortana,[1] contains two agreements in split-screen: a "MICROSOFT SOFTWARE LICENSE TERMS" agreement to the left, and an Acer "End User License Agreement" (the "EULA") to the right. (Mot. Ex. G.) There is only one "Accept" button. (*Id.*)

The Acer EULA on the right-hand side contains an arbitration clause (the clause is not visible as presented to the user, but an all-caps reference to it is), and states, in the visible top portion of the displayed text, in all capital letters:

> IMPORTANT-READ CAREFULLY: THIS END USER LICENSE AGREEMENT ("AGREEMENT") IS A LEGAL AGREEMENT BETWEEN YOU (EITHER AN INDIVIDUAL OR A SINGLE ENTITY), AND ACER INC. INCLUDING ITS SUBSIDIARIES ("ACER") FOR THE SOFTWARE (WHETHER PROVIDED BY ACER AND/OR BY ACER'S THIRD-PARTY LICENSORS OR SUPPLIERS) THAT ACCOMPANIES THIS AGREEMENT OR IS INCORPORATED INTO THIS COMPUTER SYSTEM, INCLUDING ANY ASSOCIATED MEDIA, PRINTED MATERIALS AND RELATED USER ELECTRONIC DOCUMENTATION WHICH MAY BE BRANDED "ACER", "GATEWAY", "PACKARD BELL", OR "E-MACHINES" (COLLECTIVELY, THE "SOFTWARE"). AGREEMENTS RELATING TO ANY OTHER PRODUCT OR TOPIC ARE NEITHER INTENDED SHOULD THEY BE IMPLIED. BY INSTALLING OR ACTIVATING THE SOFTWARE OR ANY PORTION THEREOF, YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT.

(Zhou Decl. Ex. G.; Dunne Decl. Ex. 2.) Because Stewart did not personally set up his Acer laptop, nor observe his nephew doing so, he never observed or read a screen on his computer displaying a "Windows 10 License Agreement," nor Acer's EULA. (Stewart Decl. ¶ 15.) Stewart never clicked accept on a computer screen displaying the EULA. (*Id.* ¶ 16.)

---

[1] The Cortana narration says, in a cheerful voice: "Next up: the legal stuff. In short, you'll need to select 'Accept' to use Windows. You can decline, but then, you know, no Windows." (Dunne Decl. ¶ 7, Exs. 2 & 3.)

On August 16, 2022, after experiencing intrusive stuttering and other harms due to a defective AMD processor that Acer built into his Aspire 5 laptop, Stewart filed a lawsuit in this Court. (Compl., Dkt. 1.) Stewart's Complaint was filed on his own behalf and on behalf of two putative classes of consumers who bought Acer computers with defective AMD Ryzen or Athlon processors. (*Id.* at ¶¶ 252, 254.) On October 27, 2022, more than two months after Stewart filed suit, Acer responded by moving to compel arbitration. (Dkt. 21.) Acer's Motion asserts that Stewart agreed to arbitrate his claims in either or both of the Warranty and the EULA, and asserts that both purported agreements are enforceable.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. § 4, a pleadings-based motion to compel arbitration is treated as "akin to a motion to dismiss." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 833 (9th Cir. 2022). If a motion cannot be granted on the pleadings, "optional discovery" may be permitted before the motion is evaluated under the summary judgment standard of Fed. R. Civ. P. 56. *Id.* at 831, 833. "At summary judgment, if a court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.* at 831 (internal quotation marks omitted). If the party opposing arbitration demands a jury trial, "the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose." *Id.* (cleaned up) (quoting 9 U.S.C. § 4).

## ARGUMENT

"Generally, a Court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Knapke*, 38 F.4th at 831. The party seeking to compel arbitration bears the burden on both these issues. *Id.* at 832. A third issue, even where there is an agreement to arbitrate and even where the agreement covers the dispute, is enforceability: if the agreement at

issue is unconscionable, it is unenforceable under California law and cannot be used to compel arbitration. *See Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1107 (2021). It is Stewart's burden to show unconscionability. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

Acer's Motion should be denied for two principal reasons: *First*, Acer has not met its burden to show that Stewart agreed with Acer to arbitrate the claims in this case. As to the Warranty, there is no evidence that Stewart (or anyone on his behalf) agreed to it at all. As to the EULA, even if Stewart's nephew is held to have agreed to it on Stewart's behalf, the EULA by its terms governs "software," and no "other product or topic"; the dispute in this case is indisputably not about the software in Stewart's computer. *Second*, even if Stewart's claims were subject to an agreement to arbitrate, such an agreement would be unenforceable under the doctrine of unconscionability.

## I.    THE PARTIES DID NOT FORM AN AGREEMENT TO ARBITRATE

As the party seeking to compel arbitration, Acer bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citation omitted). Applying California law on contract formation,[2] Acer has failed to meet this burden as to either the Warranty or the EULA.

### A.    There Is No Agreement to Arbitrate Under the Warranty

Acer's contention that Stewart agreed to arbitrate under the Warranty rests entirely on two factual assertions: (1) that Stewart reviewed the Warranty on the Acer.com website before purchasing his laptop on Amazon; and (2) that Acer included a copy of the Warranty in the laptop's box, which Amazon shipped to Stewart. (Mot. at 8-9.) Neither assertion establishes an agreement.

"As a general rule, 'silence or inaction does not constitute acceptance of an offer.'" *Norcia*, 845 F.3d at 1284 (quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372,

---

[2] "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). The parties agree California law applies. (*See* Mot. at 9.)

1385 (1993)). Insofar as the Warranty's arbitration provision constituted an offer by Acer to enter into an arbitration agreement, Stewart met that offer with silence. *Cf. id.* at 1285-86. After briefly reviewing warranties on the Acer.com website (apparently without seeing, let alone considering, the arbitration provision), not only did Stewart not express any assent to Acer, but he proceeded to buy his laptop from *a different vendor*, Amazon. (Stewart Decl. ¶¶ 5-10.) Stewart could not have reasonably understood that by buying a product from *Amazon*, he was entering into an arbitration agreement with *Acer. See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 569 (9th Cir. 2014) ("Knutson could not assent to Sirius XM's arbitration provision because he did not know that he was entering into a contract with Sirius XM.").

Acer claims it is sufficient that Stewart "had notice that disputes concerning a product were subject to arbitration prior to purchase" (Mot. at 9), but that simply begs the question. Absent "outward manifestations of consent that would lead a reasonable person to believe the offeree has assented to the agreement," there *is* no arbitration agreement—and there is none here. *Norcia*, 845 F.3d at 1286 (cleaned up); *see also Dang v. Samsung Elecs. Co.*, 673 F. App'x 779, 780 (9th Cir. 2017) ("[A] seller's offer of a warranty does not create a binding bilateral contract with a buyer."). Insofar as Acer means to suggest that Stewart's silence should be treated as consent to the Warranty's arbitration provision because he "retain[ed] the benefit offered" by Acer, *id.* at 1285—again, incongruously, through a purchase from Amazon—Acer misses the mark. This might be so if he were seeking to obtain the benefit *of the Warranty*, but none of his claims here does. *See Pang v. Samsung Elecs. Am., Inc.*, 371 F. Supp. 3d 633, 639-40 (N.D. Cal. 2019) (applying *Norcia*).

Acer fares no better with the copy of the Warranty purportedly included in Stewart's laptop box. California courts have not adopted the "in-the-box" theory of assent urged by Acer, by which the mere inclusion of terms in a product box is sufficient to bind the consumer to those terms. *See Norcia*, 845 F.3d at 1287-90. Again, the guiding principle is that "silence alone does not constitute assent." *Id.* at 1290. Acer's argument here also suffers from a problem of proof. Though Acer confidently proclaims—based solely on the declaration of an Acer paralegal—that "the Warranty

was in Stewart's Computer box, because all Acer computers in the United States ship with a paper warranty" (Mot. at 3 (citing Hogan Decl.)), Plaintiff has not yet had the opportunity to test this assertion through discovery. For his part, Stewart states that he *did not* see any documents containing the Warranty in the box. (Stewart Decl. ¶ 11.) And even if he had seen the Warranty in the box, that would not have bound him to arbitrate claims not involving the Warranty, such as those here. *See Norcia*, 845 F.3d at 1289-90.

### B. There Is No Agreement to Arbitrate Under the EULA

Acer's argument that Stewart agreed to arbitrate under the EULA is based on a false premise derived from an imaginary judicial admission. From the bare fact that he admits to having "used the Computer," Acer surmises that Stewart thereby "admits that he clicked the 'Accept' button necessary to accept the EULA and the agreement to arbitrate included therein." (Mot. at 10.) The truth is quite the opposite. Stewart not only didn't click any "Accept" button displayed on his laptop—he never even saw one. (Stewart Decl. ¶ 12, 14-16.) That is because it was Stewart's nephew who, on his own initiative, set up the laptop for him. (*Id.* ¶ 12.) Stewart didn't see the EULA or any other document on the laptop screen during the initial boot-up process and didn't direct his nephew to accept any EULA or any other agreement on his behalf. (*Id.* ¶ 12-17.) To this day, Stewart does not know whether his nephew clicked "Accept" on a screen displaying the EULA during the laptop's initial boot-up process. (*Id.* ¶ 18.)

Even if Acer could show that Stewart's nephew did click the "Accept" button, to establish that this action bound *Stewart* to the EULA, Acer would also have the burden to show that the nephew was acting as Stewart's agent when he clicked "Accept"; *and* that either (1) Stewart gave his nephew actual or apparent authority to agree to the EULA, including its arbitration provision; or (2) Stewart later knowingly ratified his nephew's purported acceptance of the agreement. *See Knapke*, 38 F.4th at 832-35 (applying Washington law); *see also Logan v. Country Oaks Partners, LLC*, 82 Cal. App. 5th 365, 375 (2022) (authority granted nephew to make health-care decisions on plaintiff's behalf did not include authority to execute arbitration agreement on his behalf); *Pillar*

*Project AG v. Payward Ventures, Inc.*, 64 Cal. App. 5th 671, 676 (2021) (applying agency principles to determine whether nonsignatory was bound to arbitration agreement); *Inglewood Tchrs. Assn. v. Pub. Emp. Rels. Bd.*, 227 Cal. App. 3d 767, 780 (1991) (burden rests on party asserting existence of agency relationship). Given Stewart's undisputed testimony that he did not give his nephew any such authority and that he had—and still has—no knowledge of any action by his nephew to agree to the EULA, Acer has not met its burden to prove that Stewart is bound by the EULA's arbitration provision.

## II.    STEWART'S CLAIMS ARE NOT ARBITRABLE

### A.    The Parties Did Not "Clearly and Unmistakably" Delegate Arbitrability

Acer correctly notes (Mot. at 7) that if parties wish to delegate to an arbitrator questions of arbitrability—such as "whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all," *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022)—they must do so "clear[ly] and unmistakabl[y]." *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018).[3] Clear and unmistakable evidence is needed to overcome the "presumption *against* the arbitrability of arbitrability," under which any ambiguity should be resolved "in favor of deciding the parties did *not* delegate these questions to an arbitrator." *Id.* (cleaned up). Acer's sole argument on this point is that the Warranty and EULA both incorporate the American Arbitration Association's ("AAA") arbitration rules (Mot. at 8), but that is insufficient to carry Acer's burden, *see DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (burden rests with party seeking to compel arbitration of arbitrability), for two reasons.

***First***, as to the EULA, an arbitration provision's incorporation of the AAA rules cannot provide "clear and unmistakable" evidence of an intent to delegate arbitrability where a separate provision creates conflict or ambiguity by providing that a *court* may decide arbitrability issues,

---

[3] Where, as here, "the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies," the question of whether an agreement "clearly and unmistakably" delegates arbitrability is governed by federal arbitrability law. *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015).

as when a severability provision allows a court to hold "any" term or provision of the agreement invalid or unenforceable. *See Magill v. Wells Fargo Bank, N.A.*, 2021 WL 6199649, at *3-5 (N.D. Cal. June 25, 2021); *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 1365946, at *7-8 (N.D. Cal. Apr. 6, 2016); *Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *6-8 (N.D. Cal. Mar. 14, 2016); *cf. Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator" *where there was no conflicting contract provision*).[4] The EULA does just that. Under the heading "GENERAL," the EULA states: "If any provision of this Agreement is held *by a court of competent jurisdiction* to be contrary to law that provision will be enforced to the maximum extent permissible and the remaining provisions of this Agreement will remain in full force and effect." (Zhou Decl., Ex. H, at 5 (emphasis added).) As in *Magill*, *Levi Strauss*, and *Vargas*, the ambiguity created by this provision precludes the conclusion that the EULA "clearly and unmistakably" delegates arbitrability. *See Magill*, 2021 WL 6199649, at *4-5.

**Second**, as to both the EULA and the Warranty, Acer ignores the holding of "the majority of the lower courts in the Ninth Circuit" that "incorporation of the AAA rules [is] insufficient to establish delegation in consumer contracts involving at least one unsophisticated party." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (citation omitted) (collecting cases); *accord MacClelland v. Cellco P'ship*, 2022 WL 2390997, at *3-4 (N.D. Cal. July 1, 2022); *Magill*, 2021 WL 6199649, at *5. Like most consumers, Stewart has no special knowledge of warranty agreements, end-user license agreements, or arbitration provisions. He simply bought a computer online (from a retailer other than Acer). He is, in short, an "unsophisticated" party with

---

[4] A 2018 case in this district, *Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at *4-6 (N.D. Cal. Sept. 11, 2018), disagreed with *Vargas* and *Levi Strauss*, reasoning that these cases predated *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016). However, the *Taylor* court acknowledged that *Mohamed* did not concern a severability provision allowing a court to hold any term or provision of the agreement invalid or unenforceable, *see* 2018 WL 4334770, at *4-6—a fact later identified by the *Magill* court as grounds for distinguishing *Mohamed*.

respect to the EULA and the Warranty. Under the majority rule in this circuit, those documents'
reference to the AAA is insufficient to "clearly and unmistakably" delegate arbitrability.

Accordingly, even if the parties had formed an arbitration agreement, it would be for the
Court—not an arbitrator—to decide questions of arbitrability, including (1) whether the agreement
covers Stewart's claims; and (2) whether the agreement is enforceable.

### B.     An Arbitration Agreement Under the EULA Would Not Cover Stewart's Claims

Even if Stewart had agreed to arbitrate under the EULA, Acer could not meet its burden to
show that the agreement would cover the claims he asserts in this action. *See Ashbey v. Archstone
Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (burden on party seeking to compel
arbitration). Stewart's claims relate solely to defective *hardware*—specifically, the AMD
processor incorporated into the laptop. (*See, e.g.*, Compl. ¶¶ 1-29.) In contrast, the EULA
prominently states that its scope is limited to *software*—here, the Windows 10 software preloaded
onto the Computer. The EULA leaves no room for ambiguity about this, stating on page 1:

> **IMPORTANT-READ CAREFULLY: THIS END USER LICENSE
> AGREEMENT ("AGREEMENT") IS A LEGAL AGREEMENT BETWEEN
> YOU . . . AND [ACER] FOR THE SOFTWARE** (WHETHER PROVIDED BY
> ACER AND/OR BY ACER'S THIRD-PARTY LICENSORS OR SUPPLIERS)
> **THAT ACCOMPANIES THIS AGREEMENT OR IS INCORPORATED
> INTO THIS COMPUTER SYSTEM,** INCLUDING ANY ASSOCIATED
> MEDIA, PRINTED MATERIALS AND RELATED USER ELECTRONIC
> DOCUMENTATION WHICH MAY BE BRANDED "ACER", "GATEWAY",
> "PACKARD BELL", OR "E-MACHINES" (COLLECTIVELY, THE
> "SOFTWARE"). **AGREEMENTS RELATING TO ANY OTHER PRODUCT
> OR TOPIC ARE NEITHER INTENDED NOR SHOULD THEY BE
> IMPLIED.**

(Zhou Decl., Ex. H, at 1 (emphasis added).) Notably, this portion of the EULA is essentially the
only portion actually visible to a consumer without scrolling. (*Id.*, Ex. G.)

The last sentence could not be clearer that the EULA expressly *disclaims* agreements
relating to any "product or topic" other than software. This is borne out by the EULA's substantive
provisions, virtually all of which relate exclusively to *software*. (*See* Zhou Decl., Ex. H, at 1-5.)
Reading the EULA as a whole, as the Court must, *see* Cal. Civ. Code § 1641, it is impossible to
escape the conclusion that the EULA is an agreement about software, and *only* about software.

And while it's true that the EULA's arbitration provision could, in isolation, be read to encompass hardware-related disputes as well,[5] such an interpretation is unreasonable in the context of the entire EULA. *See Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360, 1369-70 (2008).

*Thompson* is directly on point. There, the plaintiffs had purchased condo units built or sold by defendants. When doing so, each plaintiff signed a "Title 7 Addendum" and received an accompanying "Title 7 Master Declaration," both of which contained arbitration provisions. The Addendum stated that it and its attachments "exist[ed] for the purpose of implementing the requirements of Title 7"—a California statutory scheme concerning actions involving construction defects. *Id.* at 1369. Significantly, Title 7 excludes fraud-based claims. *Id.* at 1368. Defendants nonetheless sought to compel plaintiffs to arbitrate their fraud-based claims under the Addendum and Master Declaration, relying in part on the Master Declaration's broad definition of "Dispute."

The court held that although, in isolation, the term "Dispute" could be read to encompass non-Title 7 (*i.e.*, fraud-based) claims, construing the agreements as a whole and considering the Addendum's statement that its purpose was to implement Title 7, it would be unreasonable to interpret these provisions as requiring arbitration of non-Title 7 claims. 165 Cal. 4th at 1369-70. The court found its conclusion bolstered by the fact that the relevant documents were replete with references to Title 7, *id.* at 1370, much as the EULA expressly confines itself to, and then throughout refers almost exclusively to, software. Rejecting defendants' appeal to the "strong policy in favor of arbitration," the *Thompson* court held that that policy "may not be used to permit

---

[5] The EULA defines "Dispute" as:

> any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof; (ii) the related order for, purchase, delivery, receipt or use of any product or service from Acer; or (iii) any other dispute arising out of or relating to the relationship between You and Acer, its parents, subsidiaries, affiliates, directors, officers, employees, beneficiaries, agents, assigns, component suppliers (both hardware and software), and/ or any third party who provides products or services purchased from or distributed by Acer. The term "You" means the original purchaser and those in privity with the original purchaser, such as family members or beneficiaries.

(Zhou Decl., Ex. H, at 5.)

a party to enforce provisions of an arbitration agreement that . . . were so poorly drafted that another party cannot be presumed to have agreed to them." *Id.*

Likewise, even if (contrary to fact) Stewart had reviewed the EULA and clicked "Accept" during the initial boot-up process, it would have been clear to him or any reasonable consumer—both from the all-caps disclaimer on page 1 and the nearly exclusive focus on software throughout—that the EULA was all about the parties' rights and responsibilities regarding the Computer's accompanying *software*, regardless of the more broadly worded definition of "Dispute" in the arbitration provision. Stewart's *hardware*-related claims thus would not be subject to arbitration under the EULA even if he had agreed to arbitrate under it.

**C.      Any Arbitration Agreement Would Be Unenforceable as Unconscionable.**

Stewart also cannot be compelled to arbitrate because any arbitration agreement under the EULA or Warranty would be unenforceable under the doctrine of unconscionability. To render an arbitration agreement unenforceable, there must be both procedural and substantive unconscionability. "But they need not be present in equal parts. Rather, California courts employ a sliding scale to determine unconscionability, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1093 (2021) (cleaned up). Both elements of unconscionability are sufficiently present here to invalidate any arbitration agreement that might have been made under the EULA or the Warranty.

**1.      The EULA's Arbitration Provision Is Unconscionable.**

The EULA's arbitration provision bears strong hallmarks of both procedural and substantive unconscionability, particularly as applied to a hardware- rather than software-based dispute such as this one.

***Procedural Unconscionability.*** Establishing procedural unconscionability requires "[a] showing of either oppression or surprise." *Fisher*, 66 Cal. App. 5th at 1095. Both are present here. Oppression is shown where the arbitration agreement is contained in an adhesion contract,

meaning one that is "standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Id.* (citation omitted). There is no question that the EULA—if it was a contract at all—meets this definition.

The EULA is also shot through with the element of surprise, particularly as to Acer's contention that it mandates arbitration of *hardware*-related disputes. In this context, "[s]urprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Fisher*, 66 Cal. App. 5th at 1095. The reasons for surprise here are manifold. To begin, Stewart *never saw the EULA* during the setup of the laptop—which his nephew performed—or anytime thereafter. (Stewart Decl. ¶¶ 14-17.) He didn't even know it had an arbitration provision, let alone one that purported to cover hardware-related disputes. And as discussed above, if he had been able to review the EULA, replete with references to software, he would have been given the unmistakable impression that the EULA dealt only with software-related matters. *See supra*, § II.B.

That impression would only have been solidified by something Acer did not mention in its motion: it appears that the screen on which the EULA is presented during the initial boot-up process—which bears the title "Windows 10 License Agreement"—is presented with narration by *Microsoft's* virtual assistant, Cortana, saying, "Next up, the legal stuff. In short, you'll need to select 'Accept' *to use Windows*. You can decline, but then, you know, no *Windows*," and saying nothing else. (Dunne Decl. ¶ 7, Exs. 2 & 2.) That screen displayed only a single "Accept" button. (*See* Zhou Decl., Ex. G.) A reasonable consumer clicking "Accept" on what they had been told was an agreement to "use Windows" software would likely have been surprised to learn they were also agreeing to arbitrate all disputes relating to their computer's *hardware*.

Finally, contributing both to oppression and surprise is Acer's incorporation by reference of the AAA arbitration rules, which underlies Acer's argument that the EULA delegates arbitrability to an arbitrator (Mot. at 8). *See Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 660 (2022) (holding that degree of procedural unconscionability can "rise to a

moderate level" where party drafting agreement "fails to provide a copy of the applicable arbitration rules"). Considering that the EULA has a severability provision providing that a court may hold "any" term or provision of the agreement invalid or unenforceable, *see supra*, § II.A, "[a] conscientious reader . . . would likely be surprised to find the referenced AAA rules allocated authority for arbitrability" to an arbitrator instead. *See id.* at 661. Further, "[i]t is oppressive to artfully hide contract terms by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." *Id.* (cleaned up). Taken together, the elements of oppression and surprise present in the EULA result in at least a "moderate," *cf. Nelson*, 77 Cal. App. 5th at 660, if not outright high degree of procedural unconscionability.[6]

**Substantive Unconscionability.** The EULA also contains multiple elements of substantive unconscionability. First, the purported inclusion of hardware-related claims in the arbitration provision of an agreement that otherwise concerns only software—and says so prominently— "render[s] the scope of the arbitration provision[] unforeseeably broad, which would not have been within the reasonable expectations of the plaintiff[]," *Thompson*, 165 Cal. App. 4th at 1373.

Also substantively unconscionable are the EULA's limitations on Acer's liability. One provision excludes Acer from liability for "any special, incidental, indirect, punitive, or consequential damages whatsoever . . . under or in connection with any provision of this Agreement." (Zhou Decl., Ex. H, at 3 (all-caps omitted).) Another caps damages, stating that "the entire liability of Acer . . . shall be limited to the aggregate amount paid by you for the Software." (*Id.* (all-caps omitted).) Under California law, one-sided liability limitations like these are substantively unconscionable. *Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204, 212 (2020). Combined with the procedural elements just discussed, these substantive elements of unconscionability render the arbitration provision unenforceable against Stewart.

---

[6] As in *Fisher*, to establish procedural unconscionability Stewart need not show a lack of reasonable market alternatives "with more favorable contract terms." *See* 66 Cal. App. 5th at 1096. That principle applies only where "surprise is not seriously in issue, and the plaintiff relies solely on the defendant's use of an adhesion contract to show procedural unconscionability." *Id.*

-13-

### 2.      The Warranty's Arbitration Provision Is Unconscionable.

The Warranty's arbitration provision suffers from several (though not all) of the same unconscionability problems the EULA's does and is similarly unenforceable against Stewart.

***Procedural Unconscionability.*** Like the EULA, if the Warranty is a contract at all, it is an adhesion contract. The Warranty also incorporates the AAA rules by reference (Hogan Decl., Ex. B, at 5), which is oppressive even in the absence of conflict with any other provision of the purported agreement. *See Nelson*, 77 Cal. App. 5th at 661. Further, the assertions by Acer that the Warranty is "agreed to" simply by reading it on a website—even before buying a computer somewhere else—or by allegedly receiving it in a box (without ever seeing it) are serious procedural unconscionability issues, if Acer's argument that such actions constitute acceptance are to be believed.

***Substantive Unconscionability.*** Like the EULA, the Warranty contains one-sided limitations on Acer's liability, including both an exclusion from liability for incidental, consequential, punitive, or special damages and a damages cap limited to "the purchase price you paid for products or services plus interest allowed by law." (Hogan Decl., Ex. B, at 4-5.) For the same reasons, these Warranty provisions render any arbitration agreement substantively unconscionable. *See Dennison*, 47 Cal. App. 5th at 212.

## III.   CONDITIONAL REQUEST FOR ADDITIONAL DISCOVERY

Stewart submits that Acer's motion can and should be denied on the current record. However, as explained in Stewart's motion to enlarge time to respond to the motion (ECF No. 22), discovery in this matter only just opened (on October 25, 2022) and there are facts relevant to contract formation and arbitrability—including assertions made by Acer's declarants in support of this motion—that have not yet been the subject of discovery. On November 8, 2022, Stewart served document requests on Acer and requested the availability of its declarants for deposition, but has not received any documents or deposition commitments to date. Thus, should the Court be inclined to grant Acer's motion, Stewart asks that the Court hold its decision in abeyance for 60 days to

allow Stewart to complete arbitration-related discovery and then, if appropriate, file a renewed opposition incorporating newly discovered facts. *See Knapke*, 38 F.4th at 828-29 (remanding to district court for additional arbitration-related discovery before summary judgment).

## IV.    JURY DEMAND

Should the Court conclude that there are any genuine disputes of material fact as to formation of an arbitration agreement or the arbitrability of Stewart's claims, Stewart demands a jury trial in accordance with the FAA. *See* 9 U.S.C. § 4; *Knapke*, 38 F.4th at 831.

## V.    CONDITIONAL REQUEST FOR STAY RATHER THAN DISMISSAL

If the Court concludes that arbitration should be compelled, Acer asks that this action be dismissed rather than stayed. (Mot. at 15.) But a stay would be more appropriate—particularly if the Court were to find that the parties agreed to delegate arbitrability, in which case a stay would be *mandatory*. While § 3 of the FAA, 9 U.S.C. § 3, states that an action "shall" upon request be stayed pending completion of arbitration, a district court has discretion to dismiss the action only when it "determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Should the Court find that the parties delegated arbitrability, it would be the *arbitrator*, not the Court, who would make that determination. *See Gutierrez v. FriendFinder Networks Inc.*, 2019 WL 1974900, at *11 (N.D. Cal. May 3, 2019). In that case, a stay would be necessary, "at least until the arbitrator makes the initial determination as to arbitrability, so that that statute of limitations will not run on claims that may ultimately not be arbitrable." *Id.*

## CONCLUSION

For at least the foregoing reasons, Acer's motion should be denied.

-15-
Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and Dismiss Complaint –
No. 3:22-CV-04684-VC

Dated: November 17, 2022       Respectfully submitted,

By: */s/ Brian J. Dunne*
     Brian J. Dunne

**BATHAEE DUNNE LLP**
Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*p.h.v.* forthcoming)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (admission pending)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

*Attorneys for Plaintiff and the
Proposed Classes*