**BATHAEE DUNNE LLP**
Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Attorneys for the* Pietosi*,* Day*, and* Stewart
*Plaintiffs and Proposed Classes*

**CROWELL & MORING LLP**
Warrington S. Parker, III (CA 148003)
wparker@crowell.com
Jacob Samet Canter (CA 324330)
jcanter@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel.: (415) 365-7210

*Attorneys for Defendant HP Inc.*

**O'MELVENY & MYERS LLP**
Matthew D. Powers (S.B. #212682)
mpowers@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel.: (415) 984-8700

*Attorneys for Defendant Advanced Micro
Devices, Inc.*

[Additional counsel listed on signature page]

**RAFFERTY & WILLIAMS LLP**
Paul F. Rafferty (SBN 132266)
prafferty@raffertywilliamslaw.com
Jack Williams, IV (SBN 309154)
jwilliams@raffertywilliamslaw.com
120 Vantis Dr. Suite 300
Aliso Viejo, CA 92656
Tel: (949) 216-3411

*Attorneys for Defendants Acer Inc. and
Acer America Corporation*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TARAN PIETOSI, et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>HP INC.,<br><br>               Defendant. | Case No. 3:22-cv-04273-VC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Hon. Vince Chhabria<br><br>Hearing Date: December 15, 2022<br>Time: 10:00 a.m. |
| JONATHAN DAY, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>     Defendant. | Case No. 3:22-cv-04305-VC |

STEPHEN STEWART,

      Plaintiff,

v.

ACER INC., et al.,

      Defendants.

Case No. 3:22-cv-04684-VC

Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, the Standing Order for Civil Cases before Judge Vince Chhabria, and the Court's minute entry of November 9, 2022, in *Pietosi, et al. v. HP, Inc.*, 3:22-cv-04273-VC, and *Stewart v. Acer Inc. et al.*, No. 3:22-cv-04684-VC, the parties in *Pietosi*,[1] *Stewart*,[2] and *Day, et al. v. Advanced Micro Devices, Inc.*,[3] No. 3:22-cv-04305-VC—which the Court related to *Pietosi* on December 5, 2022—respectfully submit this Joint Case Management Statement in advance of the case management conference on December 15, 2022, at 10:00 a.m.

1.      **Jurisdiction and Service**

***Pietosi v. HP Inc.***

The *Pietosi* Plaintiffs assert that the Court has subject matter jurisdiction over their action pursuant to 28 U.S.C. § 1332(d) (class action diversity jurisdiction). HP reserves all rights regarding the Court's jurisdiction over any of the claims asserted in the *Pietosi* matter. As discovery has not commenced, HP reserves the right to challenge the Court's jurisdiction based on information uncovered through discovery.

***Day v. Advanced Micro Devices, Inc.***

***Day* Plaintiffs' Position:**

This Court has subject matter jurisdiction over the *Day* action pursuant to 28 U.S.C. § 1332(d) (class action diversity jurisdiction). Class action diversity jurisdiction arises because at least one member of the proposed Classes is of diverse citizenship from AMD, the proposed Classes consist of 100 or more members, and the aggregate claims of the members of the proposed Classes exceed $5 million, exclusive of interest and costs. AMD has been properly served and

---

[1] The *Pietosi* parties are Plaintiffs Taran Pietosi, Sukhdip Rai, Laura Lake, and Aniette Bruzos De Logorz and Defendant HP Inc. ("HP").

[2] The *Stewart* parties are Defendants Acer Inc. and Acer America Corporation (collectively, "Acer") and Plaintiff Stephen Stewart.

[3] The *Day* parties are Plaintiffs Jonathan Day and Michelle Dobek and Defendant Advanced Micro Devices, Inc. ("AMD").

filed its Motion to Dismiss the Amended Class Action Complaint on September 29, 2022 (*Day* ECF No. 23). As set forth in their Opposition to AMD's Motion to Dismiss (*Day* ECF No. 34), the *Day* Plaintiffs contend that AMD's alleged BIOS updates do not moot their claims and thus do not affect this Court's subject matter jurisdiction.

**AMD's Position:**

As set forth in AMD's Motion to Dismiss (ECF No. 23), AMD contends that this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims, as they are moot in light of the freely available BIOS updates that AMD has provided to motherboard manufacturers.

### ***Stewart v. Acer Inc.***

Plaintiff Stewart contends that this Court has subject matter jurisdiction over his action pursuant to 28 U.S.C. § 1332(d) (class action diversity jurisdiction), as the action alleges:

- Fraud, fraud by concealment, unjust enrichment/quasi-contract, and breach of implied warranty of merchantability on behalf of the Nationwide Class;

- Violation of the Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, on behalf of the Florida Subclass.

Stewart further contends that the putative Classes consist of 100 or more members, and the aggregate claims of the members of the putative Classes exceeds $5 million, exclusive of interest and costs. Acer Inc. and Acer America Corporation have been properly served. Acer's response to the Complaint was due October 28, 2022, by stipulation of the parties (*Stewart* ECF No. 18). On October 27, 2022, Defendants filed a Motion to Compel Arbitration and Dismiss Complaint (*Stewart* ECF No. 21) (the "Motion to Compel Arbitration").

Acer contends that this Court's jurisdiction is limited to compelling Stewart to arbitrate his claims, and that Acer's Motion to Compel Arbitration is currently set to be heard by this Court on December 15, 2022.

2.    **Facts**

***Pietosi v. HP Inc.***

The *Pietosi* Plaintiffs allege that HP sold personal computers (the "Affected PCs") that incorporated AMD central processing units ("CPUs") containing defectively designed firmware Trusted Platform Modules ("fTPM"). Pietosi et al. further allege that the Affected PCs were unfit for the uses expected by consumers and marketed by HP because of this defect, which allegedly caused the Affected PCs to suffer from stuttering and other performance instability while playing media, making video/audio calls, and gaming and allegedly made Plaintiffs' computers less safe and secure than reasonably expected because the fTPM unreasonably exposed consumers to potentially devastating firmware attacks. As a result, Plaintiffs allege that consumers who purchased Affected PCs  received a product that was worth less than what they paid for it by reason of the fTPM defect and HP's marketing of the Affected PCs. Plaintiffs allege that they purchased their respective PCs in reliance on marketing and statements about their HP computers' suitability for use in gaming, media playback, audio-/videoconferencing, and alleged enterprise-level security, including that HP's AMD-based PCs are specially adapted for gameplay, media playback, audio/video conferencing, and for enterprise contexts. Plaintiffs further allege that HP also advertises the security features of its AMD-based PCs, including their compliance with the security requirements of the leading PC operating system, Microsoft Windows 11 and that HP and AMD work hand in hand to integrate AMD CPUs into HP PCs and to market them to end users. Finally, Plaintiffs allege that HP knew of the purported defects and jointly marketed with AMD.

HP denies that it engaged in the conduct alleged. More specifically, HP denies that the devices that were the subject of the Amended Complaint were unfit for usage, that it knew about any purported defects, that it failed to disclose or made any misrepresentations, and that any Plaintiffs suffered the damage alleged.

### _Day v. Advanced Micro Devices, Inc._

**_Day_ Plaintiffs' Position:**

The _Day_ Plaintiffs bring this suit against AMD for selling central processing units ("CPUs")—specifically, Ryzen and Athlon CPUs (the "Affected CPUs")—containing defectively designed firmware Trusted Platform Modules ("fTPM"), which injured Plaintiffs' and putative Class members' personal computers ("PCs"), diminishing their value and making them unfit for the uses expected by consumers and marketed by AMD. As described in the Amended Class Action Complaint ("ACAC," ECF No. 13), Plaintiffs are consumers who purchased Affected CPUs with the defective fTPM design, then incorporated those CPUs into PCs, which damaged and thus decreased the economic value of those PCs. (ACAC ¶ 212). The defect in Plaintiffs' Affected CPUs manifested itself through intrusive stuttering and other performance instability while playing media, making video/audio calls, and gaming, and has made (and continues to make) Plaintiffs' computers less safe and secure than reasonably expected and advertised because it unreasonably exposes Plaintiffs' computers to potentially devastating firmware attacks. Plaintiffs purchased their CPUs in reliance on marketing and statements about the CPUs' suitability for use in gaming, media playback, audio-/videoconferencing, and alleged enterprise-level security.

AMD designs, manufactures, and sells the Affected CPUs. AMD advertises its CPUs as being specially adapted for gameplay, media playback, audio-/videoconferencing, and for enterprise contexts requiring heightened security (_id._ ¶¶ 206–08). AMD also advertises the security features of its CPUs, including their compliance with the security requirements of the leading PC operating system, Microsoft Windows 11 (_id._ ¶¶ 194–201).

As alleged in the ACAC and summarized in Plaintiffs' Opposition to AMD's motion to dismiss (ECF No. 34), AMD designed a firmware TPM, embedded directly into its CPUs, in order to pay lip service to the forthcoming Windows 11 hardware requirements (ACAC ¶ 136), but designed this fTPM in a defective way. That is, AMD located its fTPM within its Platform Security Processor ("PSP")—a separate co-processor and subsystem embedded within the overall AMD Ryzen or Athlon CPU package that has direct access to sensitive and privileged CPU and memory

resources and DRM tasks relating to media (*id*. ¶¶ 117-30). By incorporating the fTPM into the CPU, AMD's fTPM was given virtually unfettered access to precisely the resources a TPM was meant to stand apart from to ensure trustworthiness (*id*. ¶ 143). Moreover, AMD's inclusion of the fTPM as part of the PSP resulted in invasive stuttering and security vulnerabilities, damaging Plaintiff's and the Proposed Class Members' personal computers (*id*. ¶ 148). The stuttering is the result of the fTPM's location, which causes the TPM to read instructions in a peculiar way so as not to stall PSP programs running at the same time (*id*. ¶ 174). Repeated fTPM access can stall out the PSP's entire array of running programs, some of which are responsible for core functions of the computer's CPU and hardware peripherals. (*Id*.) This design flaw became apparent as early as the middle of 2021, when reports poured in that AMD Ryzen systems were stuttering when playing streaming video or video games (*id*. ¶ 148). Users online and in AMD's customer forums reported that such stuttering occurred multiple times a day, while listening to music, watching or editing videos, or gaming (*id*. ¶¶ 149–59). On March 8, 2022, AMD finally acknowledged that there was a problem and that an unspecified firmware update would be forthcoming, but refused to recall its defective CPUs and provided no meaningful workaround rather than recommending the purchase of an external TPM hardware module—a costly proposition, and one that contradicted AMD's marketing that Ryzen-based or Athlon-based PCs already benefited from TPM security (*id*. ¶¶ 163–68).

AMD's fTPM implementation in the PSP results in several harms to AMD-based PC users. First, the incorporation of an Affected Ryzen or Athlon CPU—a defective component that makes a PC less secure and causes intrusive stuttering—into a PC directly injures the PC (*id*. ¶¶ 176, 212). Next, computers incorporating affected Ryzen and Athlon CPUs are more vulnerable to firmware attacks than other comparable PCs, such that a PC with a Ryzen or Athlon CPU has less economic value by virtue of its Affected CPU (*id*. ¶ 210). Furthermore, because AMD's fTPM shares resources with the main CPU and the PSP co-processor, users running Ryzen and Athlon CPUs may experience intrusive stuttering during audio and video playback, during video conferencing, and while playing games (*id*. ¶ 211). Plaintiffs have personally suffered each of these

effects in their computers incorporating the Affected CPUs (*id.* ¶¶ 5, 28–29). Because of the latter two effects, the economic value of Plaintiffs' and Proposed Class Members' PCs was lower at the time of purchase than the price they paid for their PCs, resulting in immediate out-of-pocket loss (*id.* ¶ 212). The ACAC evaluates and measures the existence and amount of this economic harm due to the incorporation of an Affected Rzyen or Athlon CPU through a pre-complaint statistical conjoint study (*id.* ¶¶ 213–24).

As explained in Plaintiffs' Opposition to AMD's motion to dismiss, AMD's allegations of a "fix" are unsupported by the evidence, and contrary to the actual facts and allegations of the ACAC. (Opp'n at 11-15.) AMD's own evidence regarding this alleged "fix" states that AMD's June 2022 BIOS updates was potentially "bug[gy]" and did not in fact roll out to all motherboard manufacturers and models (even the most popular ones) in June 2022. (*Id.*). Moreover, AMD's own evidence does not even purport to claim that the June 2022 BIOS update was in fact effective in the wild (*id.*), and AMD does not even assert (because it could not and cannot) that a BIOS update could remedy all injuries from its defective design (*id.* at 11). In any event, no BIOS update could "moot" Plaintiffs' past injuries, and separate from all the foregoing, the value of Plaintiffs' and Proposed Class Members' PCs remains lower than it otherwise would have been, including upon resale, resulting in additional injury to Plaintiffs and the Proposed Class Members (*id.* at 12).

**AMD's Position:**

Plaintiffs filed their original complaint on July 26, 2022, (ECF No. 1) and filed the operative First Amended Complaint ("FAC") on August 12, 2022 (ECF No. 13).  As set forth in the FAC, Plaintiffs allege that the AMD central processing unit ("CPU") chips they purchased are defective because they cause "stuttering" during video playback and the use of "firmware Trusted Platform Module" or "fTPM" makes their PCs vulnerable to security attacks. AMD strongly disagrees with Plaintiffs' claims and contends that none of Plaintiffs claims have merit.  AMD has moved to dismiss the complaint on multiple grounds and, if necessary will prove on summary judgment that Plaintiffs' claims fail on the facts. Plaintiffs' claims fail because (among other things) Plaintiffs' assertions regarding supposed "security" vulnerabilities are simply wrong, and

the "stuttering" issue Plaintiffs identify (1) is only alleged to have occurred years after Plaintiffs bought their CPUs as a result of new software (Windows 11), and AMD cannot possibly guarantee that hardware will be fully compatible with *future* software releases, (2) once the stuttering issue was identified after Windows 11 launched in late 2021, AMD fixed it via a free firmware update (and did so long before this case was filed), and (3) the same sources the Plaintiffs cite in their complaint show that the "stuttering" was extremely minor in any event, *see, e.g.*, FAC ¶¶ 149–155 (stuttering issue was split-second and generally occurred "3 or 4 times per day" in a manner that "doesn't seem to be affecting performance or anything else").

First, Plaintiffs fail to mention in the FAC that, as evidenced by judicially-noticeable documents, AMD released free firmware updates to every major motherboard manufacturer that resolve the alleged stuttering issue (*see* ECF No. 23, Motion to Dismiss, Ex. 1) months before Plaintiffs filed this action and that AMD's CPU chips indisputably comply with industry standards (including the TPM 2.0 standard Plaintiffs reference in the FAC) and Microsoft's Windows 11 requirements. Nowhere in Plaintiffs' FAC or in their Opposition to AMD's Motion to Dismiss do Plaintiffs contend that they have even attempted to download the firmware updates, let alone that these updates have failed to resolve the alleged stuttering issue. Nor do Plaintiffs contend that the update is unavailable from their own motherboard manufacturers (which Plaintiffs have never identified). As set out in AMD's pending Motion, the law is clear that Plaintiffs cannot simply ignore the existence of a freely-available fix; instead, it is their burden to disclose its existence and adequately plead its ineffectiveness. Plaintiffs have not done so and do not identify any facts in their Opposition brief that even suggest that they could. Nor can they – the firmware updates absolutely resolve "all" supposed "issues," AMD's CPUs are fully compatible with Windows 11's security requirements, and if this case proceeds to discovery, Plaintiffs will be unable to produce any competent evidence that the free firmware updates (which they apparently have not even attempted to install) are in any way "ineffective."

Second, Plaintiffs do not allege that they have experienced any actual security breaches and Plaintiffs' vague allegations of "security risks" are not actionable as a matter of law. And

Plaintiffs' contentions that their PCs have been "damaged" as a result of AMD's implementation of fTPM are also definitively false and unsupported by the allegations in the FAC. Nowhere in the FAC do Plaintiffs allege *any* facts to show that AMD's CPUs cause any physical harm to the PC itself or to any of the PC's components. Here, Plaintiffs' claim is that AMD's CPU chips were defective—not that the fTPM actually *damaged* any of the other components of the computer. Indeed, there can be no bonafide dispute that fTPM can be easily disabled by the computer user and/or that a discrete hardware TPM can be installed on the motherboard to achieve the purported security protections Plaintiffs desire. Plaintiffs concede as much in the FAC and their Opposition to AMD's Motion to Dismiss. FAC ¶ 151 (user did not experience stuttering until they "enabled fTPM for the first time"), ¶ 157 (same), ¶ 165–166 (stating that purchasing a discrete hardware TPM to remedy the stuttering issue would be "costly," not ineffective).

Third, the core contention underpinning the FAC is that customers should have been provided with discrete "hardware" TPMs that are "separate" from and "stand apart from the CPU" chip (e.g., FAC ¶¶ 138–44), but this is illogical and incoherent because that type of "discrete" or "separate" TPM by definition would be separate from the CPU chip and thus provided by a different company. (FAC ¶¶ 138–44; ECF No. 23, Ex. 11.)  AMD's alleged failure to manufacture an additional piece of hardware, for which it has no responsibility, is not and cannot be misrepresented as a "defect." In their Opposition to AMD's Motion to Dismiss, Plaintiffs attempt to recast this argument slightly, arguing that the "defect" is not the failure to manufacture a discrete, hardware TPM (which, again, would be done by a different company, not AMD) but rather is the *placement* of fTPM on the PSP/CPU. But, there is no place for a CPU manufacturer to implement TPM *except on the CPU it manufactures.* Critically, buyers of AMD CPUs are *not* required to use AMD's fTPM *at all*—that feature can be *disabled* by the user, and if a user wanted to implement a discrete hardware TPM on their AMD-based system, they could simply install a TPM chip on their motherboard (or purchase a motherboard with such a chip), and install their AMD CPU with fTPM disabled. And if Plaintiffs wanted the security they contend only a discrete TPU can provide, they could have simply purchased a motherboard with such a chip—AMD's

"failure" to implement a feature on a portion of the computer's hardware *that AMD does not manufacture* is not a "defect" in AMD's CPU chips.  For these reasons, and as set forth in AMD's Motion to Dismiss (ECF No. 23), AMD contends that the FAC should be dismissed with prejudice.

### *Stewart v. Acer Inc.*

**Plaintiff's Position:**

Plaintiff brings this suit against Acer for selling personal computers (the "Affected PCs") that incorporated AMD central processing units ("CPUs") containing defectively designed firmware Trusted Platform Modules ("fTPM"), which made the Affected PCs unfit for the uses expected by consumers and marketed by Acer. Plaintiff is a consumer who purchased an Affected PC and, as a result of the defective fTPM design, received a product that was worth less than what he paid for it by reason of the fTPM defect and Acer's marketing of the Affected PCs suffering from it. The defect in Plaintiff's Acer computer manifested itself through intrusive stuttering and other performance instability while playing media, making video/audio calls, and gaming, and has made (and continues to make) Plaintiff's Acer computer less safe and secure than reasonably expected and advertised, because it unreasonably exposes it to potentially devastating firmware attacks. Plaintiff purchased his PC in reliance on marketing and statements about his Acer computer's suitability for use in gaming, media playback, audio-/videoconferencing, and alleged enterprise-level security.

As described in the Class Action Complaint ("Complaint," ECF. No. 1), Acer designs, manufacturers, and sells desktop and laptop personal computers, some of which incorporate CPUs manufactured by AMD. Acer advertises its AMD-based PCs as being specially adapted for gameplay, media playback, audio-/videoconferencing, and for enterprise contexts requiring heightened security. Acer also advertises the security features of its AMD-based PCs, including their compliance with the security requirements of the leading PC operating system, Microsoft Windows 11. Acer and AMD work hand in hand to integrate AMD CPUs into Acer PCs and to market them to end users.

AMD defectively designed a firmware TPM, embedded directly into its CPUs, in order to pay lip service to the forthcoming Windows 11 requirements. Following an increase in firmware attacks on PCs (*id.* ¶¶ 98-106), Microsoft published minimum system requirements for Windows 11 operating system, making TPM compliance mandatory for devices preinstalling the new operating system in June 2021 (*id.* ¶¶ 108, 111). Original Equipment Manufacturers ("OEMs") that used AMD Athlon or Ryzen CPUs, like Acer, faced with an added and potentially significant cost to their systems, sought a solution from AMD. (*Id.* ¶ 140.)

AMD's response was to embed a so-called "firmware TPM" or "fTPM" into the Platform Security Processor ("PSP") of AMD's CPU. (*Id.*) The PSP is a separate co-processor and system designed to function alongside its CPU, embedded within the overall AMD CPU package, and has direct access to sensitive and privileged CPU and memory resources and DRM tasks relating to media. (*Id.* ¶¶ 117-30.) By its incorporation into the CPU, AMD's fTPM was given virtually unfettered access to precisely the resources a TPM was meant to stand apart from to ensure trustworthiness. (*Id.* ¶ 143.) AMD's CPUs, with the defeat device fTPM, now *look* compliant with the Windows 11 TPM requirement, but implementation of the fTPM provides none of the protections that a hardware TPM was designed to provide. (*Id.* ¶¶ 146-49.)

AMD's inclusion of the fTPM as part of the PSP resulted in invasive stuttering and security vulnerabilities, damaging Plaintiff's and the Proposed Class Members' personal computers. (*Id.* ¶ 150.) The stuttering is the result of the fTPM's location, which causes the TPM to read instructions in a peculiar way so as not to stall PSP programs running at the same time. (*Id.* ¶ 152.) Repeated fTPM access can stall out the PSP's entire array of running programs, some of which are responsible for core functions of the computer's CPU and hardware peripherals. (*Id.*) This design flaw became apparent as early as the middle of 2021, when reports poured in that AMD Ryzen systems were stuttering when playing streaming video or video games. (*Id.* ¶ 153.) Users online and in AMD's customer forums reported that such stuttering occurred multiple times a day, while listening to music, watching or editing videos, or gaming. (*Id.* ¶¶ 154-64.) Users also complained directly to OEMs in OEM support forums, including pleas for help from AMD-based systems that

stuttered. (*Id*. ¶ 165.) These complaints went unheeded and unacknowledged. (*Id*. ¶ 166.) On March 8, 2022, AMD finally acknowledged that there was a problem, but never explained the root of the issue and provided no meaningful workaround rather than recommending the purchase of an external TPM hardware module—a costly proposition, and one that contradicted AMD and manufacturers' (including Acer's) marketing that Ryzen-based or Athlon-based PCs already benefited from TPM security. (*Id*. ¶ 167-70.)

Acer and AMD have long jointly marketed PCs, touting their inclusion of AMD processors. (*Id*. ¶¶ 182-84.) In fact, most of these representations highlighted the precise applications affected by the flawed AMD fTPM design, including Acer's AMD-based suitability for video chatting and video playback, productivity, and high-end performance. (*Id*. ¶¶ 185-99.) Acer also touted, and continues to tout, the security of its AMD-based laptops, but fails to disclose that the very design of AMD's PSP and fTPM subsystems increases the risk of improper access to critical hardware, access to sensitive and protected system memory, and firmware attacks. (*Id*. ¶¶ 200-03.)

Acer is aware of the overall design of AMD's PSP system, including the PSP's direct access to protected memory regions, to privileged CPU functionality, and to system hardware. (*Id*. ¶ 223.) It is also aware of AMD's fTPM implementation of TPM 2.0, including that fTPM is implemented as a program running on AMD's PSP system, including its related security vulnerabilities. (*Id*.) Indeed, even after AMD made a public announcement about the stuttering issues related to the fTPM, Acer continued to sell PCs without any disclosure of the fTPM's defects or the security vulnerability inherent in the PSP/fTPM design. (*Id*. ¶ 226.)

AMD's fTPM implementation in the PSP results in two harms to AMD-based PC users. First, affected Ryzen and Athlon CPUs are more vulnerable to firmware attacks than other comparable CPUs. (*Id*. ¶ 231.) Second, because AMD's fTPM shares resources with the main CPU and the PSP co-processor, users running Ryzen and Athlon CPUs may experience intrusive stuttering during audio and video playback, during video conferencing, and while playing games. (*Id*. ¶ 232.) Plaintiff has personally suffered both effects in his Acer AMD computer. (*Id*. ¶¶ 5, 30.) Because of these two effects, the economic value of the PCs purchased from Acer by Plaintiff and

Proposed Class Members was lower at the time of purchase than the price they paid for their PCs, resulting in immediate out-of-pocket loss. (*Id*. ¶ 233.) Moreover, the value of Plaintiff's and Proposed Class Members' Acer PCs remains lower than it otherwise would have been, including upon resale, resulting in additional injury to Plaintiff and the Proposed Class Members. (*Id*.)

**Acer's Position:**

Plaintiff agreed to arbitrate his claims with Acer in a non-class format, and therefore, this Action is improper and should be dismissed.  Acer's Motion to Compel Arbitration is pending and will be heard on December 15, 2022.  Therefore, Acer has not yet considered the factual allegations brought by Plaintiff in this Court, but will do so once Plaintiff brings his claims in the proper forum.  Acer otherwise generally denies the factual allegations set forth above.

### 3.   Legal Issues

### *Pietosi v. HP Inc.*

What follows are the legal issues that either the *Pietosi* Plaintiffs or HP assert are principal legal issues. By agreeing to the list, neither Plaintiffs or HP are stipulating that resolution or the addressing of each of the legal issues below is necessary for resolution of this case. Neither party intends to waive the right to assert additional legal issues at a later stage of the litigation.

- Whether HP is liable to Plaintiffs and the Nationwide Class (or, in the alternative, the California, Pennsylvania, Michigan, and Florida Subclasses) under the common law of fraud.

- Whether HP is liable to Plaintiffs and the Nationwide Class (or, in the alternative, the California, Pennsylvania, Michigan, and Florida Subclasses) under the common law of fraudulent concealment.

- Whether HP is liable to Plaintiffs and the Nationwide Class (or, in the alternative, the California, Pennsylvania, Michigan, and Florida Subclasses) under the common law of unjust enrichment/quasi-contract.

- Whether HP is liable to Plaintiffs and the Nationwide Class (or, in the alternative, the California, Pennsylvania, Michigan, and Florida Subclasses) for common-law breach of the implied warranty of merchantability.

- Whether HP is liable to Plaintiff Rai and the California Subclass under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

- Whether HP is liable to Plaintiff Rai and the California Subclass under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

- Whether HP is liable to Plaintiff Rai and the California Subclass under the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

- Whether HP is liable to Plaintiff Rai and the California Subclass for breach of the implied warranty of merchantability under Cal. Comm. Code §§ 2314 and 10212.

- Whether HP is liable to Plaintiff Rai and the California Subclass for breach of the implied warranty of merchantability under Cal. Civ. Code § 1791.

- Whether HP is liable to Plaintiff Pietosi and the Pennsylvania Subclass under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, *et seq.*

- Whether HP is liable to Plaintiff Pietosi and the Pennsylvania Subclass for breach of the implied warranty of merchantability under 13 Pa. Stat. Ann. § 2314.

- Whether HP is liable to Plaintiff Lake and the Michigan Subclass under the Michigan Consumer Protection Act, Mich. Comp Laws § 445.903, *et seq.*

- Whether HP is liable to Plaintiff Lake and the Michigan Subclass for breach of the implied warranty of merchantability under Mich. Comp. Laws §§ 440.3214 and 440.2860.

- Whether HP is liable to Plaintiff Bruzos De Logorz and the Florida Subclass under the Florida Unfair & Deceptive Trade Practices Act's, Fla. Stat. § 501.201, *et seq.*

- Whether the putative classes should be certified under Federal Rule of Civil Procedure 23.

- Whether injunctive relief—in the form of a prohibition on continuing to sell defective computers with AMD processors, a recall, a free replacement program, a buy-back, or other appropriate measures—should be ordered against HP.

- The amount and types of monetary damages suffered by and recoverable by Plaintiffs and the putative classes.

- Whether the Plaintiffs have standing to sue. *See* U.S. Const. Art. III.

- Whether the Plaintiffs' claims are barred by the express warranties they entered into when purchasing their PCs.

- Whether the Plaintiffs detrimentally relied on representations made by HP.

- Whether any representations regarding the fTPM made by HP were material.

- Whether HP had the requisite knowledge relevant to proving the Plaintiffs' claims.

-13-

- Whether the Plaintiffs' claims are barred by the statute of limitations.

- Whether any equitable or other principles limit recovery, such as the economic loss doctrine.

- Whether injunctive or other equitable relief is appropriate, and the amount of damages.

### *Day v. Advanced Micro Devices, Inc.*

The legal issues in this case include, but are not limited to:  (a) whether AMD's design, marketing and sale of its CPU chips constituted common law negligence (Count I), constituted common law unjust enrichment/quasi-contract (Count II[4]), constituted a breach of implied warranty under the law of warranties (Count III), violated Illinois' Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/1, *et seq.* (Count IV), constituted a breach of implied warranty of merchantability under Illinois law, 810 Ill. Comp. Stat. 5/2-314 (Court V), constituted a breach of implied warranty of merchantability under West Virginia law, W. Va. Code § 46-2-314 (Count VI), and violated the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-102 (Count VII); whether injunctive relief should be entered against AMD to end the sale of and/or to recall the defective processors; the amount and types of monetary damages suffered by and recoverable by Plaintiffs and the Proposed Classes; and (b) whether the proposed action can be maintained as a class action under Rule 23.

### *Stewart v. Acer Inc.*

**Stewart Plaintiff's Position:**

- Whether Plaintiff must be compelled to arbitrate this dispute.

- Whether Acer is liable to Plaintiff and the Nationwide Class (or, in the alternative, the Florida Subclass) under the common law of fraud.

- Whether Acer is liable to Plaintiff and the Nationwide Class (or, in the alternative, the Florida Subclass) under the common law of fraudulent concealment.

- Whether Acer is liable to Plaintiff and the Nationwide Class (or, in the alternative, the Florida Subclass) under the common law of unjust enrichment/quasi-contract.

---

[4] Defendant contends that Plaintiffs must identify the state law they contend applies to Counts II and III.

- Whether Acer is liable to Plaintiff and the Nationwide Class (or, in the alternative, the Florida Subclass) for common-law breach of the implied warranty of merchantability.

- Whether Acer is liable to Plaintiff Stewart and the Florida Subclass under the Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

- Whether the putative classes should be certified under Federal Rule of Civil Procedure 23.

- Whether injunctive relief—in the form of a prohibition on continuing to sell defective computers with AMD processors, a recall, a free replacement program, a buy-back, or other appropriate measures—should be ordered against Acer.

- The amount and types of monetary damages suffered by and recoverable by Plaintiffs and the putative classes.

**Acer's Position:**

Whether Plaintiff must be compelled to arbitrate this dispute, and correspondingly whether this action should be dismissed.  Further consideration of any other legal issues would be premature in this Court until a ruling issues on Acer's pending Motion to Compel Arbitration.  Acer reserves the right to amend this response should arbitration not be compelled by this Court, and Acer's appeal of that ruling is unsuccessful.

4.    **Motions**

***Pietosi v. HP Inc.***

***Motion for Class Certification.*** Plaintiffs anticipate filing a motion for class certification.

***Motion for Summary Judgment.*** HP anticipates filing a motion for summary judgment (or in the alternative, summary adjudication) and all necessary pre-trial motions.

***Day v. Advanced Micro Devices, Inc.***

On September 28, 2022, AMD filed a Motion to Dismiss Plaintiffs' FAC (ECF No. 19). Pursuant to the Court's Order of September 29, 2022 (ECF No. 22), AMD filed a revised version of the Motion to Dismiss on September 29, 2022, and a hearing was set for January 19, 2023. (ECF No. 23.) Plaintiffs filed their Opposition to the Motion to Dismiss on November 3, 2022 (ECF No. 34), and AMD filed its reply in support of the Motion to Dismiss on December 1, 2022. (ECF No.

46.) The hearing date for the Motion to Dismiss has been vacated pursuant to the December 5, 2022 Order Reassigning Case. (ECF No. 48.) AMD intends to re-notice the Motion to Dismiss for the same hearing date (January 19, 2023 at 10:00 AM) before this Court.

If the case proceeds past the pleadings, AMD would like to avail itself of the procedure set forth in the Court's standing order whereby the parties file and brief cross-motions for summary judgment on the named Plaintiffs' claims prior to briefing the class certification motion. AMD believes that the evidence will be clear that Plaintiffs' claims all fail on the merits, and therefore that early cross-motions on summary judgment will further the interests of both the parties and the court by delivering a swifter resolution of this case and conserving resources.

Plaintiffs anticipate filing a motion for class certification.

### *Stewart v. Acer Inc.*

***Motion to Compel Arbitration.*** On October 27, 2022, Acer filed a Motion to Compel Arbitration and Dismiss Complaint. (ECF No. 21.) Plaintiff filed his Opposition on November 17, 2022. (ECF No. 32.) Acer filed its Reply on November 30, 2022. (ECF No. 34.) The Motion is set for hearing on December 15, 2022.

***Motion for Class Certification.*** Plaintiffs anticipate filing a motion for class certification.

### 5.      **Amendment of Pleadings**

### *Pietosi v. HP Inc.*

The parties do not presently expect to amend their pleadings. The parties, however, reserve the right to seek amendment pursuant to Fed. R. Civ. P. 15 by motion for good cause shown no later than January 20, 2023.

### *Day v. Advanced Micro Devices, Inc.*

Plaintiffs filed their operative First Amended Complaint ("FAC") on August 12, 2022. (ECF No. 13.) Prior to this case being related to *Pietosi*, then-presiding Judge Freeman set the deadline to join additional parties or amend the pleadings for January 20, 2023. (ECF No. 41.) Plaintiffs do not intend to add any additional parties or amend the pleadings at this time, but reserve their rights to seek leave to amend for cause in the future on any available basis (e.g., following

rulings on any motions to dismiss). AMD reserves its rights to oppose any such proposed amendments on any available basis.

### *Stewart v. Acer Inc.*

***Stewart* Plaintiff's Position:**

Plaintiff does not presently expect to add or dismiss any parties or claims but reserves his right to revisit this determination as new facts are learned, including through discovery.

**Acer's Position:**

Acer maintains no final position on this topic until its Motion to Compel Arbitration is decided, but currently, it does not expect to add any parties to this action.

### 6.    Evidence Preservation

### All Cases

The parties certify that they have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), are aware of their obligations, and have taken reasonable steps to preserve potentially relevant evidence. The parties confirm that they have met and conferred concerning these obligations.

### 7.    Disclosures

### *Pietosi v. HP Inc.*

The parties timely exchanged initial disclosures on November 2, 2022, pursuant to Rule 26(a)(1).

### *Day v. Advanced Micro Devices, Inc.*

The parties timely exchanged initial disclosures on November 10, 2022, pursuant to Rule 26(a)(1).

### *Stewart v. Acer Inc.*

***Stewart* Plaintiff's Position:**

Plaintiff timely served his initial disclosures on November 2, 2022, pursuant to Rule 26(a)(1).

**Acer's Position:**

Because Plaintiff must arbitrate his claims and dismiss this action, and because Acer's Motion to Compel Arbitration is currently pending and set to be heard on December 15, 2022, Acer limits its initial disclosures to the factual evidence it has already provided to Plaintiff in support of its Motion to Compel Arbitration.  Outside of that pending motion, which if granted, will entirely dispose of this action, further initial disclosures on the complicated subject matter alleged by Plaintiff are premature, unnecessary, and unduly burdensome for Acer.

8.    **Discovery**

*Pietosi v. HP Inc.*

No discovery has occurred to date. The parties will confer regarding stipulated electronically stored information (ESI) and protective orders and will endeavor to make joint proposals to the Court at the appropriate time. The parties agree that discovery should proceed, but they disagree on the scope of discovery.

*Pietosi* **Plaintiffs' Position:**

Plaintiffs propose a presumptive limit of 50 interrogatories per side, subject to increase for good cause. *See* Fed. R. Civ. P. 33(a)(1). Plaintiffs propose a presumptive limit of 25 depositions per side, subject to increase for good cause. *See* Fed. R. Civ. P. 30(a)(2).

**HP's Position:**

Defendant's position is that the case should proceed pursuant to the discovery limits articulated in the Federal Rules of Civil Procedure and that any discovery beyond those limits should only occur upon the demonstration of good cause by the requesting party.  As a result, Defendant proposes a presumptive limit of 25 interrogatories per side. and a presumptive limit of 10 depositions per side, including experts.  See Fed R. Civ. P. 33(a)(1); 30(a)(2).

*Day v. Advanced Micro Devices, Inc.*

To date, other than initial disclosures, the parties have not engaged in discovery. The parties agree to conduct discovery under the guidelines set forth in the Federal Rules of Civil Procedure. The parties anticipate that they will each require discovery in the form of depositions,

interrogatories, requests for admission, and document requests (including potential discovery from third parties). The parties will confer regarding stipulated electronically stored information (ESI) and protective orders and will endeavor to make joint proposals to the Court at the appropriate time. The parties, however, disagree on the timing of discovery, as explained in more detail below.

*Day* **Plaintiffs' Position:**

Plaintiffs believe that discovery should open immediately. Discovery regarding the defects in AMD's CPUs is critical to not only the claims in this action but to those in *Pietosi* and *Stewart*, which involve claims against the manufacturers of PCs that incorporated the defective AMD CPUs. That discovery will be necessary for those cases to proceed regardless of the outcome of AMD's pending Motion to Dismiss.

Plaintiffs propose a presumptive limit of 50 interrogatories per side, subject to increase for good cause. *See* Fed. R. Civ. P. 33(a)(1). Plaintiffs propose a presumptive limit of 25 depositions per side, subject to increase for good cause. *See* Fed. R. Civ. P. 30(a)(2).

**AMD's Position:**

AMD contends that, other than initial disclosures, discovery should be stayed until the Court's ruling on AMD's Motion to Dismiss. *See e.g.*, *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (finding good cause for staying discovery "when [the court] is convinced that the plaintiff will be unable to state a claim for relief."); *In re Google Digit. Advert. Antitrust Litig.*, No. 20-cv-03556-BLF, ECF. No. 53 (N.D. Cal. Dec. 8, 2020) (Freeman, B.) (granting discovery stay pending resolution of defendant's motion to dismiss because the motion to dismiss could be dispositive of the entire case and can be decided absent discovery); *Reveal Chat Holdco, LLC. v. Facebook Inc*., No. 20-cv-00363-BLF, ECF No. 31 (N.D. Cal. April 10, 2020) (Freeman, B.) (same); *Davidson v. Apple*, No. 5:16-CV-04942-LHK, ECF No. 109 (N.D. Cal. Aug. 4, 2017) (Koh, J.) (lifting discovery stay only after second round of motion to dismiss briefing); *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, ECF No. 80 (N.D. Cal. Aug. 23, 2017) (Koh, J.) (lifting stay of discovery only after ruling on third round of motion to dismiss briefing); *Gibbs v. Carson*, 2014 U.S. Dist. LEXIS 5413, at *8 (N.D. Cal. Jan. 14, 2014) (staying discovery pending

motion to dismiss); *Hall v. Tilton*, 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010) (same); *Hamilton v. Rhoads*,  2011 U.S. Dist. LEXIS 123494, at *2 (N.D. Cal. Oct. 25, 2011) (same). AMD's pending Motion to Dismiss (ECF No. 23) goes to the core of Plaintiffs' claims and, until the Court rules on that motion, it is unclear to what extent Plaintiffs' claims will proceed. And unless the Court denies AMD's Motion to Dismiss in its entirety, the Court's ruling will likely narrow or focus the claims and issues in this case in ways that will significantly impact the parties' discovery.

For example, Plaintiffs' FAC alleges that AMD's CPUs cause "stuttering" during video playback and makes their PCs vulnerable to security attacks but does not mention that AMD has released a firmware update that resolves these issues. Under the circumstances, it will be difficult (if not impossible) to resolve disputes over the proper scope of AMD's document collection and review efforts until the Court adjudicates whether and to what extent AMD's firmware updates moot Plaintiffs' claims. Absent a stay until AMD's pending Motion to Dismiss is resolved, AMD could be forced to spend considerable amounts of time and money on discovery that might never be necessary—compared with Plaintiffs, whose only "prejudice" will be a delay of a few months (assuming their claims survive AMD's Motion to Dismiss). To be clear, contrary to Plaintiffs' representations, no discovery is necessary for this Court to take judicial notice of the public availability of firmware updates that resolve the alleged stuttering issue and grant AMD's Motion to Dismiss the FAC as moot. As described in the "Facts" section above, this fix was publicly and freely available for months before Plaintiffs filed their initial complaint and it was and is Plaintiffs' burden to investigate these updates and their efficacy. If Plaintiffs believe they can truthfully plead facts to show that the BIOS updates are ineffective, they should plead those specific facts. But nowhere in their Opposition (or above) do they identify any specific facts they could plead to even suggest that the BIOS updates are ineffective for Plaintiffs' own devices. That is because they cannot do so — as multiple independent publications reported at the time, in "June of 2022…AMD's new AGESA 1207 microcode…made it to the vast majority of AM4 motherboards on the market - both old and new. This update includes fixes for the infamous fTPM stuttering bug

and includes full Ryzen 5000 series CPU support on all older generation AM4 motherboards, including the 300 series and 400 series." *See AMD's Bugfix For Ryzen Stuttering Now Widely Available*, June 14, 2022, Tom's Hardware; *see also AMD BIOS Updates Arrive To Resolve Ryzen TPM Stuttering Issue In Windows*, June 13, 2022, HotHardware ("AMD's come out and said that it has shipped fixed firmware along with AGESA version 1.2.0.7 to the motherboard manufacturers. Essentially, it's in their hands now."); *The Ryzen TPM Stuttering Bug is Finally Fixed on Windows 11*, June 14, 2022, Digitaltrends ("AMD and its motherboard partners are rolling out BIOS updates that completely patch the [stuttering] bug."); *Have an AMD PC? Update Your BIOS to Nix Some Stuttering Issues*, June 13, 2022, PC Gamer ("I've checked the few major manufacturers—Asus, MSI, ASRock, and Gigabyte—and all but one of them (ASRock) offers the latest AGESA version in a BIOS update"); *AMD Fixes Performance and Stuttering Issues in Gaming Related to fTPM on Windows 10/11*, June 15, 2022, HardwareTimes ("AMD Fixes Performance and Stuttering Issues in Gaming Related to fTPM on Windows 10/11."). Given the detailed allegations in the FAC about what Plaintiffs contend are the technical aspects of AMD's fTPM, they are clearly capable of investigating those freely (and publicly) available updates— their apparent failure to do so before filing this case should not be a basis for pursuing "discovery," particularly since Plaintiffs never plead *any* facts (much less specific ones) to suggest the BIOS updates are ineffective.

If the case does proceed past the pleadings, AMD contends that discovery should focus on the issues necessary to resolve the parties' early cross-motions for summary judgment as set out above. AMD contends that the parties should discuss limitations on interrogatories and depositions once the Motion to Dismiss the FAC has been resolved.

### Stewart v. Acer Inc.

The parties will discuss stipulated electronically stored information (ESI) and protective orders and will endeavor to make joint proposals to the Court at the appropriate time.

**Stewart Plaintiff's Position:**

On November 8, 2022, Plaintiff served on Acer a set of requests for production focused on arbitration-related topics. That same day, Plaintiff inquired about the availability for deposition of two Acer employees whose declarations were submitted by Acer in support of its Motion to Compel Arbitration and Dismiss Complaint. Acer have yet to provide those employees' availability. As detailed in Plaintiff's Opposition to Acer's Motion (ECF No. 32 at 14-15), there are facts relevant to contract formation and arbitrability—including assertions made by Acer's declarants in support of the Motion—that have not yet been the subject of discovery. Should the Court be inclined to grant Acer's motion, Plaintiff requests that the Court hold its decision in abeyance for 60 days to allow Plaintiff to complete arbitration-related discovery and then, if appropriate, file a renewed opposition incorporating newly discovered facts.

Not inclusive of this limited, arbitration-related discovery, Plaintiff proposes a presumptive limit of 50 interrogatories per side, subject to increase for good cause. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff proposes a presumptive limit of 25 depositions per side, subject to increase for good cause. *See* Fed. R. Civ. P. 30(a)(2).

**Acer's Position:**

Plaintiff seeks discovery prematurely, because the conduct of discovery is inconsistent with Acer's right to expediently and cost efficiently arbitrate this dispute with Plaintiff. On this basis, and others, the service of discovery upon Acer is unduly burdensome and vexatious. Plaintiff already raised with the court the issue of conducting limited discovery, and on November 9, 2022, the Court concurred with Acer that it could not decide whether discovery was needed until the Court reviewed Acer's Motion to Compel Arbitration ("Motion"), Plaintiff's opposition thereto, and Acer's reply. To date, the Court has not revisited this issue. If the Motion is granted, the

conduct of discovery is a moot point.  If the Motion is denied, Acer is entitled to an immediate appeal, and again, the conduct of discovery in the near term is a moot point.

9.      **Class Action**

***Pietosi v. HP Inc.***

This case is a putative class action. Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

Plaintiffs propose that one or more classes be certified pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) and to file a motion for class certification as set forth in Plaintiffs' proposed schedule. HP contends that Plaintiffs will be unable to meet the requirements for class certification under the Federal Rules of Civil Procedure.

As noted below, Plaintiffs wish to resolve the issue of class certification prior to liability. HP's position is that given AMD's decision to take advantage of the Court's procedures for early cross-motions for summary judgment, HP also intends to take advantage of the Court's procedures for filing cross-motions for summary judgment prior to class certification.  But HP does not agree to the accelerated discovery schedule that AMD seeks.  As noted below, HP proposes that the *Pietosi* parties file any motions for summary judgment only after the Court rules on summary judgment in the *Day* matter.

***Day v. Advanced Micro Devices, Inc.***

***Day* Plaintiffs' Position:**

This case is a putative class action. Counsel for Plaintiffs have reviewed the Procedural Guidance for Class Action Settlements.

Plaintiffs propose that one or more classes be certified pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) and to file a motion for class certification as set forth in Plaintiffs' proposed schedule.

**AMD's Position:**

AMD contends that this action cannot be maintained as a class action. Here, Plaintiffs will not be able to show that they and the putative classes identified in the FAC meet the requirements for certification under Federal Rule of Civil Procedure 23.

AMD believes that the parties should first brief cross-motions for summary judgment on liability with respect to the named plaintiffs before proceeding to any class certification briefing. AMD proposes that the Court set a hearing for those cross-motions approximately 6 months after the date that the Court resolves AMD's pending motion to dismiss, and that the parties stipulate to a briefing schedule for those motions consistent with the Court's guidance once the motion to dismiss is resolved (assuming some claims survive).

### *Stewart v. Acer Inc.*

This case is a putative class action. Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

Plaintiffs propose that one or more classes be certified pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) and to file a motion for class certification at a time to be determined should the Court deny Defendants' Motion to Compel Arbitration.

If the action proceeds in this Court rather than before an arbitrator, the parties wish to resolve the issue of class certification before liability.

### 10.    Related Cases

*Pietosi, et al. v. HP Inc.*, No. 3:22-cv-04273-VC

*Day, et al. v. Advanced Micro Devices, Inc.*, No. 3:22-cv-04305-VC

*Stewart v. Acer Inc., et al.*, No. 3:22-cv-04684-VC

### 11.    Relief

### *Pietosi v. HP Inc.*

Plaintiffs seek restitution and damages to the maximum extent authorized by law, including both pre- and post-judgment interest. Plaintiffs also seek injunctive relief, as well as attorneys' fees and costs. HP denies that Plaintiffs are entitled to any relief.

**_Day v. Advanced Micro Devices, Inc._**

**_Day_ Plaintiffs' Position:**

Plaintiffs seek damages to the maximum extent authorized by law. Plaintiffs also seek injunctive relief, as well as attorneys' fees and costs.

**AMD's Position:**

AMD contends that Plaintiffs and the putative class have not been damaged and are not entitled to any relief.

**_Stewart v. Acer Inc._**

Plaintiff seeks restitution and damages to the maximum extent authorized by law, including both pre- and post-judgment interest. Plaintiff also seeks injunctive relief, as well as attorneys' fees and costs.

**12.    Settlement and ADR**

**_Pietosi v. HP Inc._**

No settlement discussions have taken place. In compliance with ADR L.R. 3-5, the parties discussed ADR at their October 18, 2022 meet-and-confer but were unable to reach agreement on an ADR process. Plaintiffs are open to participating in private mediation at an appropriate time. HP is open to participating in private mediation at an appropriate time. The parties will be prepared to discuss ADR at the case management conference.

**_Day v. Advanced Micro Devices, Inc._**

The parties have met and conferred in compliance with ADR L.R. 3-5(b) and have engaged in informal settlement discussions. The parties are open to private mediation, but contend that any mediation should occur, at the earliest, after the Court's hearing on AMD's Motion to Dismiss. The Parties agree that mediation is not likely to be productive before the Court rules on AMD's motion to dismiss and the pleadings are settled. On November 29, 2022, then-presiding Judge Freeman approved the Stipulation and Order Selecting ADR Process by which the parties agreed to participate in private mediation (with a mediator to be chosen by agreement of the parties) by March 21, 2024. (ECF No. 45.)

*Stewart v. Acer Inc.*

No settlement discussions have taken place. In compliance with ADR L.R. 3-5, the parties discussed ADR at their October 25, 2022 meet-and-confer but were unable to reach agreement on an ADR process. Plaintiffs are open to participating in private mediation at an appropriate time.

Acer does not disagree with the benefits of ADR, but because of the obvious ramification associated with its Motion to Compel Arbitration, whether granted or denied, further discussion of an acceptable ADR format in this Court, is premature.

13.   **Other References**

*Pietosi v. HP Inc.*

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

*Day v. Advanced Micro Devices, Inc.*

None at this time.

*Stewart v. Acer Inc.*

The parties disagree about whether this case is subject to mandatory binding arbitration. Acer has filed a Motion to Compel Arbitration, which Plaintiff has opposed. The parties do not believe this case is suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

14.   **Narrowing of Issues**

*Pietosi v. HP Inc.*

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

*Day v. Advanced Micro Devices, Inc.*

At this state of the proceedings, the Parties are unable to narrow the factual or legal issues presented in this action. The result of Defendant's pending Motion to Dismiss may, depending on the Court's ruling, narrow the issues in this case as to the claims at issue in the Motion.

***Stewart v. Acer Inc.***

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

**15.     Expedited Trial Schedule**

**All Cases**

The parties do not consent to the Expedited Trial Procedure of General Order No. 64.

**16.     Scheduling**

***Pietosi, Day*, and *Stewart* Plaintiffs**

The *Pietosi*, *Day*, and *Stewart* plaintiffs submit that the most efficient course would be for all three of these related cases to be on the same schedule through at least class certification. Per the Court's direction at the November 9, 2022 case management conference, (*see* Hr'g Tr. 10:17-19), the *Pietosi*, *Day*, and *Stewart* plaintiffs propose the following schedule through class certification, which the *Day* parties had stipulated to before that action was related to *Pietosi*, (*see Day* ECF No. 44):

| Event | Date |
|---|---|
| Last day to amend pleadings/join other parties | January 20, 2023 |
| Plaintiffs' class certification expert disclosures due | September 8, 2023 |
| Defendant's class certification expert disclosures due | October 6, 2023 |
| Plaintiffs' class certification reply expert disclosures due | October 27, 2023 |
| Last day to file class certification and class *Daubert* motions | December 22, 2023 |
| Last day to file oppositions to class certification and class *Daubert* motions | February 2, 2024 |
| Last day to file replies to class certification and class *Daubert* motions | February 23, 2024 |
| Last day for hearing on class *Daubert* motions | March 8, 2024 |
| Completion of first ADR session | March 21, 2024 |
| Last day for hearing on motion for class certification | March 29, 2024 |

**HP's Position (*Pietosi*):**

Given AMD's decision to take advantage of the Court's procedures for early cross-motions for summary judgment, HP also intends to take advantage of the Court's procedures for seeking summary judgment prior to class certification.  HP, however, does not agree to an expedited discovery schedule, and proposes that any cross-motions for summary judgment in the *Pietosi* matter occur only after the Court has ruled on the cross-motions for summary judgment filed in the *Day* matter.  HP further proposes that class certification occur only after summary judgment has been addressed in the *Pietosi* matter.  HP understands that based on the November 9, 2022 Case Management Conference, the Court will hold a Case Management Conference after the hearing on cross-motions for summary judgment and will set a schedule for class certification proceedings at that time.

**AMD's Position (*Day*):**

Here, AMD intends to take advantage of this Court's procedures for early cross-motions for summary judgment.  Specifically, AMD proposes that after resolution of AMD's Motion to Dismiss (and assuming any of Plaintiffs' claims survive), the parties confer and propose a hearing date for the summary judgment motions that is no later than 6 months after resolution of the Motion to Dismiss, as well as a briefing schedule that complies with the Court's rules on summary judgment briefing in this context. Per the Court's guidance at the November 9, 2022 case management conference, AMD understands that, if the parties brief summary judgment with respect to the named plaintiffs prior to briefing class certification, the Court will (if necessary) set a case management conference after the hearing on cross motions for summary judgment and can set a schedule for class certification proceedings at that time.  (*See* Hr'g Tr. 12:5–14.)

**Acer's Position (*Stewart*):**

Acer cannot proceed under the above (proposed) schedule.  If its Motion to Compel Arbitration ("Motion") is granted, none of the above applies.  If its Motion is denied, Acer is entitled to an immediate right of appeal, and again, none of the above applies.  To the extent Acer loses its Motion, appeals, and then loses that appeal, then based on the probable time frame for the

exhaustion of that appeal, Acer would be prepared to accept the above with an additional year added to each of the proposed deadlines.

## 17.   Trial

### *Pietosi v. HP Inc.*

The parties request a jury trial. Plaintiffs currently estimate the trial will take four weeks. HP currently estimates that the trial will take two weeks.

### *Day v. Advanced Micro Devices, Inc.*

#### *Day* Plaintiffs' Position:

Plaintiffs request a jury trial. Plaintiffs currently estimate the trial will take four weeks.

#### AMD's Position:

AMD contends that it is premature to set a trial date given AMD's pending Motion to Dismiss. If the Motion to Dismiss does not resolve Plaintiffs' claims, AMD contends that, given the nature of the claims, a bench trial would be appropriate.

### *Stewart v. Acer Inc.*

#### *Stewart* Plaintiff's Position:

Plaintiff requests a jury trial in connection with Acer's Motion to Compel Arbitration and currently estimates the trial can be completed in a single day of testimony. Plaintiff also requests a jury trial on all other issues and currently estimates the trial will take four weeks.

#### Acer's Position:

Acer maintains no position on trial, except that it may not occur because of Plaintiff's agreement to arbitrate.  However, Acer otherwise denies that Plaintiff has an unconditional right to seek a jury trial on arbitrability.

## 18.   Disclosure of Non-Party Interested Entities or Persons

### *Pietosi v. HP Inc.*

The parties have filed their certifications pursuant to Civil L.R. 3-15; other than the named parties, there are no non-party interested entities or persons to report. HP has noted that Berkshire Hathaway owns 10% or more of HP Inc. stock.

### *Day v. Advanced Micro Devices, Inc.*

**_Day_ Plaintiffs' Position:**

On October 18, 2022, Plaintiffs filed their "Certificate of Interested Entities or Persons" as required by Civil Local Rule 3-15 (ECF No. 30). Plaintiffs do not have any such interest to report as of this date other than the named parties.

**AMD's Position:**

AMD filed its "Certification of Interested Entities or Persons" pursuant to Civil Local Rule 3-15.  (ECF No. 29.)

### *Stewart v. Acer Inc.*

**_Stewart_ Plaintiff's Position:**

All Plaintiffs have filed their certifications pursuant to Civil L.R. 3-15; other than the named parties, there are no non-party interested entities or persons to report.

**Acer's Position:**

Acer has no non-party interested entities or persons to report.

**19.   Professional Conduct**

**All Cases**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   Other Matters**

**All Cases**

None.

Dated: December 8, 2022

By:   */s/ Matthew D. Powers*
      Matthew D. Powers

**O'MELVENY & MYERS LLP**
Matthew D. Powers (S.B. #212682)
mpowers@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel.: (415) 984-8700

*Attorneys for Defendant Advanced Micro Devices, Inc.*


By:   */s/ Warrington S. Parker*
      Warrington S. Parker

**CROWELL & MORING LLP**
Astor H.L. Heaven, III (*pro hac vice*)
aheaven@crowell.com
Mohamed M. Awan (*pro hac vice*)
mawan@crowell.com
1001 Pennsylvania Ave. NW
Washington, DC 20004
Tel.: (202) 624-2599

Warrington S. Parker, III (CA 148003)
wparker@crowell.com
Jacob Canter (CA 324330)
jcanter@crowell.com
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
Tel.: (415) 365-7210

*Attorneys for Defendant HP Inc.*

Respectfully submitted,

By:   */s/ Brian J. Dunne*
      Brian J. Dunne

**BATHAEE DUNNE LLP**
Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*p.h.v. forthcoming*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

*Attorneys for the* Pietosi*,* Day*, and* Stewart *Plaintiffs and Proposed Classes*


By:   */s/ Paul F. Rafferty*
      Paul F. Rafferty

**RAFFERTY & WILLIAMS LLP**
Paul F. Rafferty (SBN 132266)
prafferty@raffertywilliamslaw.com
Jack Williams, IV (SBN 309154)
jwilliams@raffertywilliamslaw.com
120 Vantis Dr. Suite 300
Aliso Viejo, CA 92656
Tel: (949) 216-3411

*Attorneys for Defendants Acer Inc. and Acer America Corporation*

**<u>FILER ATTESTATION</u>**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: December 8, 2022                    By:  */s/ Brian J. Dunne*
                                                Brian J. Dunne