UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN STEWART,

    Plaintiff,

v.

ACER INC., et al.,

    Defendants.

Case No. 22-cv-04684-VC

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 21

    The motion to compel arbitration is granted. Acer argues that Stewart is bound by the arbitration provision in the End User License Agreement, which users encounter when firing up their computers for the first time. In the alternative, Acer argues that Stewart agreed to binding arbitration when he purchased his computer after reviewing the Acer Limited Warranty Agreement, which contains a binding arbitration provision. Because Stewart is bound by the arbitration provision in the License Agreement, the Court does not reach Acer's arguments regarding the Warranty Agreement.

    Users encounter the License Agreement as part of a split-screen scrollwrap agreement, which they are required to "Accept" before being allowed to use their computers. The first sentence of the License Agreement alerts users:

> THIS AGREEMENT CONTAINS A MANDATORY AND BINDING ARBITRATION PROVISION IN WHICH YOU AND ACER AGREE TO RESOLVE ANY DISPUTE BETWEEN YOU AND ACER BY BINDING ARBITRATION. PLEASE SEE SECTION BINDING ARBITRATION BELOW.

Dkt. No. 21-9 at 2. This language adequately puts users on inquiry notice of the existence of an arbitration clause in the agreement. *See Felter v. Dell*, No. 21-4187, 2022 WL 3010173, at *1

(N.D. Cal. July 29, 2022) (quoting *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020)) ("[A] consumer is bound by an arbitration agreement if 'a reasonably prudent Internet consumer' would be put on 'inquiry notice' of the 'agreement's existence and contents.'").

Stewart tries to resist this conclusion by arguing that his nephew fired up the computer on his behalf. At the hearing, Stewart seemed to abandon this argument, but even if he hadn't, it would not allow Stewart to avoid the agreement. It is difficult to square Stewart's argument with basic principles of agency law. *See Velasquez-Reyes v. Samsung Electronics America, Inc.*, No. 16-1953, 2020 WL 6528422, at *3–4 (C.D. Cal. Oct. 10, 2020); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268 (E.D.N.Y. 2019). Moreover, if users could inoculate themselves against an arbitration agreement as conspicuous as Acer's by having someone else fire up their computers, one wonders how Acer could ever avail itself of arbitration.

Stewart next argues that, even if he were bound by it, the License Agreement applies only to software disputes and his claims concern only hardware. Acer contests both propositions, but these questions of scope are beside the point because the agreement expressly delegates questions of arbitrability to the arbitrator. *See* Dkt. No. 21-10 at 6 ("[T]he term 'Dispute' means any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, *applicability, or validity* thereof[.]") (emphasis added).[1]

Stewart argues that the License Agreement does not clearly or unmistakably delegate these questions to the arbitrator because its severability provision conflicts with its delegation provision. *See* Dkt. No. 21-10 at 6 ("[I]f any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law that provision will be enforced to the maximum extent permissible and the remaining provisions of this Agreement will remain in full force and

---

[1] The parties also debate whether the agreement's incorporation of the American Arbitration Association's rules constitutes a clear and unmistakable delegation despite Stewart's lack of sophistication, a question left open by *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015). Because the agreement contains an express delegation provision, these arguments are irrelevant.

effect."). This argument is a nonstarter after the Ninth Circuit's decision in *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1207–09 (9th Cir. 2016).

In *Mohamed*, the Ninth Circuit considered venue provisions that, quite like the severability clause in this case, contemplated that state or federal courts would have "'exclusive jurisdiction over 'any disputes, actions, claims or causes of action arising out of or in connection with this Agreement.'" *Id.* at 1209. The district court concluded that these venue provisions created ambiguity as to whether questions of arbitrability were delegated to the arbitrator. *See id.* at 1209. But the Ninth Circuit reversed, holding that any conflict between the venue and delegation provisions was "artificial" because, "[n]o matter how broad [an] arbitration clause," the need to file an action in court may arise for any number of reasons. *See id.* (citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004)).

The same reasoning applies and controls here: the fact that the License Agreement anticipates that a court might someday invalidate part of the agreement does not make the express delegation discussed above any less clear. *See Taylor v. Shutterfly, Inc.*, No. 18-0266, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (concluding that a virtually identical severability clause did not conflict with an express delegation clause under *Mohamed*); *MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-1240, 2018 WL 3619656, at *5–6 (N.D. Cal. July 30, 2018) (same); *but see Magill v. Wells Fargo Bank, N.A.*, No. 21-1877, 2021 WL 6199649, at *3–4 (N.D. Cal. June 25, 2021) (concluding that a similar severability clause conflicted with an express delegation notwithstanding *Mohamed*'s reasoning).

**IT IS SO ORDERED.**

Dated: January 20, 2023

_____
VINCE CHHABRIA
United States District Judge